■ BRUCE T. DAVIS, Appellant, v PAMALA DAVIS, Respondent. [49 NYS3d 893]—

Order, Supreme Court, New York County (Lori S. Sattler, J.), entered October 16, 2015, which, to the extent appealed from as limited by the briefs, determined, upon defendant wife's motion, that the wife did not waive her right to pendente lite relief; and order, same court and Justice, entered August 12, 2016, which, to the extent appealed from as limited by the briefs, granted the wife's motion insofar as she sought financial discovery and a hearing to determine whether the parties' postnuptial agreements are valid and enforceable, and denied plaintiff husband's cross motion for summary judgment, unanimously affirmed, without costs.

The motion court correctly determined that the wife did not waive pendente lite relief. While, in the parties' 2005 postnuptial agreement, the husband explicitly waived his right "to permanent or temporary maintenance . . . or other permanent or temporary support," the wife's waiver provision does not contain the same language, and does not clearly reflect the parties' intent that she waive any temporary relief (*see Lennox v Weberman*, 109 AD3d 703, 704 [1st Dept 2013]; *Strong v Dubin*, 75 AD3d 66, 68 [1st Dept 2010]; *cf. Anonymous v Anonymous*, 137 AD3d 583, 585 [1st Dept 2016] [the husband waived temporary support, where, among other things, the parties agreed to "waive any and all claims for spousal support and/or maintenance" "both now and in the future"]).

The motion court correctly denied the husband's cross mo-

tion for summary judgment, and properly ordered financial discovery and a hearing to determine whether the parties' 2001 and 2005 postnuptial agreements are valid and enforceable. The wife, a person of limited education, did not have independent legal counsel for the 2001 agreement, which was drafted by the husband's real estate lawyer, whom the parties jointly retained. Further, the wife alleges that she was "represented" in the 2005 agreement by the husband's friend and "drinking buddy," who had little to no matrimonial experience. She does not recall ever being advised of the contents of the agreements, or having a clear understanding of the rights she was waiving by signing the agreements. Based on the record, the wife's counsel was in direct contact with the husband, a lawyer and successful businessman, and was influenced by the husband's impatience to move the 2005 agreement forward. The wife further alleges that she was the victim of emotional and physical abuse throughout the marriage, and developed an addiction to alcohol. Under these circumstances, the wife's allegations raise an issue of fact as to whether the agreements were the product of the husband's overreaching (*Christian v Christian*, 42 NY2d 63, 72-73 [1977]; *see Petracca v Petracca*, 101 AD3d 695 [2d Dept 2012]; *cf. Gottlieb v Gottlieb*, 138 AD3d 30, 37 [1st Dept 2016], *lv dismissed* 27 NY3d 1125 [2016] [no issue raised as to the husband's overreaching where, among other things, the wife retained the services of a partner in a prominent matrimonial firm, the parties exchanged draft agreements, and the wife was an active participant in the negotiations and pushed to get the agreement signed]).

In addition, the terms of the agreements raise an issue of fact as to overreaching and the manifest fairness of the agreements (*Christian*, 42 NY2d at 73; *Petracca*, 101 AD3d at 698-699; *see Gottlieb*, 138 AD3d at 37). The wife, who never worked during the parties' marriage and had a net worth of approximately $75,000 in 2005, waived substantial rights, including the right to maintenance and equitable distribution of approximately $24,000,000 in assets. In exchange for such waiver, the wife received $1,000,000, a $300,000 "signing bonus," a $4,000 monthly housing allowance, and $750 monthly child support per unemancipated child.

We have considered the husband's remaining arguments and find them unavailing. Concur—Sweeny, J.P., Andrias, Moskowitz, Kahn and Gesmer, JJ.